IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEOPOLD S. GOSS

        v.                 :     Civil Action No. DKC 23-2257

GOODE COMPANIES, INC.

:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment law case is the motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by Goode Companies, Inc. ("GCI" or "Defendant"). (ECF No. 42). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted. The court also construes the opposition to the motion, (ECF No. 51), filed by Leopold S. Goss ("Plaintiff") as including a motion to amend, which the court grants in part and denies in part.

I. **Background[1]**

Mr. Goss was a commercial-vehicle driver employed by GCI. (ECF No. 37, at 6, 7). He repeatedly complained to GCI about his trucks' mechanical problems. (*Id.* at 6). GCI subsequently cut Mr. Goss's pay and was allegedly "hostile" toward him. (*Id.*). At

---

[1] The facts herein are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

some point, Mr. Goss was "forced [to] work without [a] full day['s] salary" and "receive[d] less than half of [his] pay." (*Id.*).  Mr. Goss notified GCI's Human Resources ("HR") Department of GCI's alleged discrimination against him, but HR allegedly "failed to fully rectify the issues, leaving [him] without representation, while [he was] being forced to work under harassing circumstances." (*Id.*).

Sometime before December 10, 2021, he was injured in a truck fire and received medical attention from a doctor.[2]  (*Id.* at 6, 7).  Following the incident, GCI did not "complete a safety report under Worker's Compensation on [Mr. Goss's] behalf," which Mr. Goss alleges denied him the "ability to attend medical appointments and treatment."  (*Id.* at 6).  After the accident, Mr. Goss experienced some unspecified psychological difficulties.  (*Id.* at 7).  He alleges, however, that he "was denied reasonable accommodations, supported by medical assessment and physician instructions[,] . . . that are common practice of [GCI] with it[s] employees," in violation of the Americans with Disabilities Act ("ADA").  (*Id.* at 6).  Mr. Goss does not elaborate on the nature of the reasonable accommodations he requested.  He was also denied

---

[2] In his original complaint, Mr. Goss stated that the truck fire occurred on November 26, 2021.  (ECF No. 1, at 6).

leave, to which he alleges he was entitled under the Family and Medical Leave Act ("FMLA"). (*Id.*).

On December 9, 2021, GCI terminated Mr. Goss's employment. (*See id.* at 6, 7 (claiming lost wages due to termination beginning on December 10, 2021)). Mr. Goss received a termination letter from GCI that did not identify a cause for his termination. (*Id.* at 6). Mr. Goss alleges that "[t]here was no policy violation, progressive disciplinary documented issues, no conduct violations, nor . . . any communications with [him] regarding ongoing issues or complaints." (*Id.*). After Mr. Goss evidently filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), GCI explained to the EEOC that the termination was due to Mr. Goss's "no call, no show." (*Id.*). Mr. Goss alleges that this was a "false statement," because he was in fact "at work, communicated with the active supervisor and [HR], supported by emails, text, and phone logs," though he does not attach that support to his complaint. (*Id.*). Mr. Goss does not provide the outcome of his EEOC complaint. GCI suspended Mr. Goss's medical benefits immediately following termination, which "imped[ed] [his] ability to seek immediate and sustained medical treatment." (*Id.*).

On May 15, 2025, Mr. Goss filed the operative amended complaint. (ECF No. 37). In the amended complaint, Mr. Goss asserts claims of "disability discrimination," "wrongful

3

termination," and "discrimination." (*Id.* at 6). These three claims in fact represent at least six different claims, which the court will refer to as follows: ADA failure to accommodate (Count I); FMLA interference (Count II); Maryland Workers' Compensation Act ("WCA") violation (Count III); wrongful termination (Count IV); Title VII violations (Count V);[3] and Fair Labor Standards Act ("FLSA") violation (Count VI).[4] He seeks $280,000 in lost wages since December 10, 2021, along with $800,000 for pain and suffering. (*Id.* at 7). GCI filed a motion to dismiss Mr. Goss's amended complaint for failure to state a claim on June 25, 2025. (ECF No. 42). After receiving an extension of time, Mr. Goss filed his response in opposition, to which he attached twenty-one exhibits, on August 22. (ECF No. 51). GCI replied on September 2. (ECF No. 55).

---

[3] Plaintiff invokes Title IX, rather than Title VII, in the jurisdiction section of his amended complaint. (ECF No. 37, at 4). In the factual allegations of the amended complaint, he does not specify which federal antidiscrimination law he invokes. It is clear, however, that Title IX does not apply to GCI because it is not an educational institution. *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 700 (4th Cir. 2018) ("Title IX allows for lawsuits against only educational institutions and programs."). Mr. Goss clarifies in his opposition that he intended to invoke Title VII, which applies to employers. (ECF No. 51, at 6). The court thus construes his amended complaint as asserting a Title VII claim.

[4] The parties do not agree on the order of the counts or how many counts Mr. Goss asserts. The court lists the counts in the order the underlying claims appear in the amended complaint and liberally construes the number of counts Mr. Goss asserts.

## II. Defendant's Motion to Dismiss

Defendant moves to dismiss all counts of Plaintiff's amended complaint. As to the factual allegations in the amended complaint, Defendant is correct that Plaintiff does not state any claim for relief. Plaintiff supplies additional factual allegations and exhibits in his response in opposition, which the court does not consider with regard to Defendant's motion to dismiss but rather construes as a motion for leave to amend to be addressed later in the opinion.

### A. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff." *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)). A plaintiff's complaint must only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"

5

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff in this case is *pro se*. Courts hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). The court has an obligation to construe pleadings of self-represented litigants liberally. *Id.* It is not necessary, however, to "conjure up questions never squarely presented," or to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

**B. Exhibits**

As a threshold matter, the court must determine which extrinsic documents may be considered on a motion to dismiss. "As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage[.]" *Faulkenberry v. U.S. Dep't of*

*Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023) (quoting *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 549 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022)). Relevant to this case, however, the court may consider exhibits attached to a response in opposition if they are authentic and integral to the complaint. *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23, 222 n.2 (4th Cir. 2009). "[F]or an extrinsic document to be integral to a complaint the document must either give rise to a claim or be the basis of an element of a claim." *Defs. of Wildlife v. Boyles*, 608 F.Supp.3d 336, 345 (D.S.C. 2022); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Ultimately, it is within the court's discretion whether "to 'exclude' matters outside the pleadings." *Henderson v. Gen. Revenue Corp.*, No. 17-cv-292, 2018 WL 4610642, at *2 (W.D.Va. Aug. 7, 2018) (quoting *Deegan v. Moore*, No. 16-cv-260, 2017 WL 1194718, at *3 (W.D.Va. Mar. 30, 2017)).

Plaintiff attaches numerous exhibits to his response in opposition, one of which Defendant attaches to its reply. Because neither party has offered an exhibit-by-exhibit analysis regarding which extrinsic material is permissible to consider on Defendant's motion to dismiss, the court exercises its discretion not to consider any of the exhibits in relation to the motion to dismiss.

C.    Count I: ADA Failure to Accommodate

Plaintiff first alleges that he suffered a "psychological disability" and "was denied reasonable accommodations, supported by medical assessment and physician instructions[,] . . . that are common practice of [GCI] with it[s] employees," in violation of the ADA.  (ECF No. 37, at 6-7).   By invoking reasonable accommodations, Plaintiff clearly seeks to assert a failure-to-accommodate claim under the ADA.  For the reasons below, Plaintiff does not state a failure-to-accommodate claim under the ADA.

For a plaintiff to establish a *prima facie* case under the ADA for failure to accommodate, he must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of the disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (alterations in original) (quoting *Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).  "Even though a plaintiff need not plead a prima facie case to survive a motion to dismiss, *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506 (2002)] 'left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of [his] claim.'" *Manning v. N.C. State Univ.*, 724 F.Supp.3d 438, 454 (E.D.N.C. Mar.

19, 2024) (second alteration in original) (footnote omitted) (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006), *overruled on other grounds by*, *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015) (en banc)) (citing, inter alia, *Swierkiewicz*, 534 U.S. at 510–15).

Defendant first argues that Plaintiff fails to provide any details in his amended complaint regarding the nature of his disability. (ECF No. 42-1, at 11–12). The ADA defines "disability" to encompass "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Although Defendant's characterization of Plaintiff's amended complaint is not quite accurate—Plaintiff *does* state in the relief section of his amended complaint that he suffered a "psychological disability," (ECF No. 37, at 7)—Defendant is correct that Plaintiff does not get past first base. Whether Plaintiff was disabled for purposes of the ADA is a legal question on which the court cannot simply credit Plaintiff's bare conclusion. *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F.Supp.3d 89, 104 (D.Md. 2019) ("The question of whether a plaintiff is disabled or has a record of disability under the ADA is a question of law for the court." (citation modified)). Plaintiff does not elaborate on what his psychological condition

9

was at the time he was denied accommodations.  Without further details in the amended complaint, Plaintiff has not adequately alleged that he was disabled under the ADA.  *See Jackson v. S. Glazers of MD LLC*, No. 24-cv-1393-GLR, 2024 WL 4335684, at *3 (D.Md. Sep. 26, 2024) (dismissing ADA claim because *pro se* plaintiff did not allege any facts, beyond bare allegations of disability, from which to infer a disability).

Defendant next argues that Plaintiff likewise has not plausibly pleaded that he could perform the essential functions of his job with reasonable accommodation.  (ECF No. 42-1, at 12–14). Defendant is correct because Plaintiff does not articulate any particular accommodation he requested or was offered.  Instead, he states only that he "was denied reasonable accommodations . . . that are common practice of [GCI] with it[s] employees."[5]  (ECF No. 37, at 6).  Absent facts regarding the accommodations he was denied and whether he could still perform the essential functions of his job, Plaintiff cannot nudge this element into the realm of plausibility.  *See Robertson v. Amazon CEO*, No. 21-cv-1832-LKG, 2022 WL 2971953, at *4 (D.Md. July 27, 2022).

---

[5] Defendant "surmises that Plaintiff is referring to a potential 'light duty' assignment" as an accommodation. (ECF No. 42-1, at 14 n.3).  Defendant's interpretation of Plaintiff's amended complaint, however, is not discernible from the facts of the amended complaint.  It is Plaintiff's role to fill in those vital gaps.

D.    **Count II: FMLA Interference**

Next, Plaintiff alleges that after his "workplace injury" in the truck fire and subsequent "psychological disability," he "was denied medically protected leave under [the] FMLA, while under a doctor's care." (ECF No. 37, at 6–7). Denial of protected medical leave constitutes an FMLA interference claim. As with his ADA claim, however, Plaintiff does not marshal enough factual support in his amended complaint to give rise to a plausible FMLA interference claim.

Under the FMLA, an "eligible employee" is entitled to take leave for up to twelve workweeks during any twelve-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" this entitlement to leave. *Id.* § 2615(a)(1). Accordingly, to state an FMLA interference claim, an employee must plausibly plead that "(1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *See Rodriguez v. Smithfield Packing Co.*, 545 F.Supp.2d

508, 516 (D.Md. 2008) (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006); 29 U.S.C. § 2615(a)(1)).

Defendant argues that Plaintiff does not allege any facts to support the first and third elements. (ECF No. 42-1, at 14–16). First, to be an eligible employee, the employee must have been employed "(i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Failure to allege eligibility results in dismissal of the claim. *Anusie-Howard v. Bd. of Educ.*, No. 12-cv-199-WDQ, 2012 WL 1964097, at *3 (D.Md. May 30, 2012). Nowhere in Plaintiff's amended complaint does he attempt to plead either of the requirements of eligibility. Therefore, he fails to state an FMLA interference claim.

As to the third element, a plaintiff must allege a "serious health condition" that entitles him to FMLA leave, and "serious health condition" covers "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). Plaintiff does allege that his "workplace injury" required "sustained medical treatment," (ECF No. 37, at 6), but without more facts, this allegation reflects nothing more than "a formulaic recitation of [an] element[] of a cause of action," *Twombly*, 550

12

U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). For this reason, too, Plaintiff fails to state an FMLA interference claim.

### E.    Count III: WCA

Plaintiff next appears to raise a claim under the Maryland WCA because he suffered a "workplace injury," after which Defendant "failed to offer or complete a safety report under Worker's Compensation on [his] behalf." (ECF No. 37, at 6). Defendant's failure to do so allegedly caused Plaintiff to be unable "to attend medical appointments and treatment." (*Id.*). Defendant did not compensate Plaintiff for lost wages and allegedly failed to "execute Worker's Comp. as indicated in [the] Handbook." (*Id.*).

Defendant correctly argues that Plaintiff's WCA claim does not belong in this court.[6] The WCA states that "each employer of a covered employee shall provide compensation in accordance with this title to the covered employee for an accidental personal injury sustained by the covered employee." Md. Code Ann., Lab. &

---

[6] At least two consequences follow, however, if an employer fails to file a report with the Workers' Compensation Committee within ten days after an employee gives proper notice of an accidental personal injury that "causes disability for more than 3 days." *See* Md. Code Ann., Lab. & Empl. §§ 9-704, 9-707(a). First, the ordinary claim limitation period of two years is tolled until the employer files the report. *See id.* §§ 9-708(b), 9-709(b)(3). Second, if the employer's failure to file within ten days was knowing, the employer is guilty of a misdemeanor. *Id.* § 9-1102.

Empl. § 9-501(a)(1).  It establishes a claims procedure channeled through the Maryland State Workers' Compensation Commission ("SWCC"), *id.* §§ 9-709, 9-714, which functions as the exclusive remedial forum (apart from several inapplicable exceptions) for covered employees' accidental personal injuries on the job, *id.* § 9-509; *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F.Supp.2d 94, 99 (D.Md. 2011).  As the United States Court of Appeals for the Fourth Circuit recently explained, when a state "vests exclusive jurisdiction in the Workers' Compensation Commission" and thereby "prohibits plaintiffs from suing to enforce a state-law right in any state court," a federal court presented with an assertion of that state right must "dismiss the [count] for failure to state a claim." *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 496-97 (4th Cir. 2024).[7]  Because Plaintiff's WCA claim is authorized to proceed only before the SWCC, the court dismisses it for failure to state a claim.

Defendant further requests dismissal of Plaintiff's entire amended complaint with prejudice "[t]o the extent Plaintiff is attempting to circumvent the exclusivity provision contained in

---

[7] In *Wideman*, the suit was premised on diversity jurisdiction, whereas this court hears Plaintiff's WCA claim based on supplemental jurisdiction.  This jurisdictional distinction makes no difference; it does not change the fact that Maryland law has created the claim Plaintiff asserts only if it is asserted before the SWCC.

the WCA." (ECF No. 42-1, at 20).  But the exclusivity provision
of the WCA applies only to an employer's liability for an
employee's accidental personal injury.  Defendant does not explain
how Plaintiff's only other state law claim in Count IV for wrongful
termination constitutes an effort to circumvent the exclusivity
provision of the WCA.  The tort at which the exclusivity provision
is directed is that of negligence.  *See Flood v. Merchants Mut.
Ins. Co.*, 230 Md. 373, 377 (1963) ("[T]he Workmen's Compensation
Act is a substitute for the employer's common law liability for
negligence[.]").  In fact, Plaintiff makes no mention of his injury
in the section of his complaint regarding wrongful termination.
(*See* ECF No. 37, at 6).  As to the federal claims Plaintiff raises
in Counts I, II, V, and VI, Defendant does not explain how a state
exclusivity provision could bar federal claims in federal court
without running headlong into the Supremacy Clause.  *See* U.S.
Const. art. VI.  The court declines to dismiss any other claim
based on the WCA's exclusivity provision.

### F.   Count IV: Wrongful Termination

Plaintiff also asserts a claim for wrongful termination,
alleging that he "was terminated without just cause following the
truck fire" and that Defendant misrepresented to the EEOC that the
reason for Plaintiff's termination was that he was a "no call, no

show."[8]    (ECF No. 37, at 6).    He later alleges that he was "terminated . . . as a form of retaliation due to [his] ongoing documented complaints about [his] trucks['] mechanical problems." (*Id.*).

Wrongful termination is a narrow exception to the rule of at-will employment; an employee must show: "(1) that the employee was discharged; (2) that the basis of the discharge violated some clear mandate of public policy; and (3) that there is a nexus between the employee's conduct and the employer's decision to fire the employee." *Symeonidis v. Paxton Cap. Grp., Inc.*, 220 F.Supp.2d 478, 483 (D.Md. 2002) (citing *Shapiro v. Massengill*, 105 Md.App. 743, 764 (1995)).    A clear mandate of public policy exists only if there is "a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question." *Porterfield v. Mascari II, Inc.*, 142 Md.App. 134, 140 (2002) (citing *Sears, Roebuck & Co. v. Wholey*, 139 Md.App. 642, 661 (2001)).    Maryland courts have identified two situations in

---

[8] Defendant's alleged misrepresentation to the EEOC regarding the reason for Plaintiff's termination cannot form the basis of a wrongful termination claim because it occurred after the termination in question.    Other litigants have asserted claims of defamation against their employers for allegedly false statements to the EEOC, but courts have dismissed such claims because the employers' statements to the EEOC are absolutely privileged.    *See, e.g.*, *Smith v. Dupont Specialty Prods. USA, LLC*, No. 23-cv-292, 2023 WL 7703470, at *4 (E.D.Va. Nov. 15, 2023).

which termination violates a clear mandate of public policy: "(1) where an employee was fired for refusing to violate the law or the legal rights of a third party and (2) where an employee has been terminated for exercising a specific legal right or duty." *Elliott v. Md. Corr. Training Ctr.*, No. 20-cv-2963-CCB, 2022 WL 814294, at *4 (D.Md. Mar. 17, 2022) (citing *King v. Marriott Int'l Inc.*, 160 Md.App. 689, 700-01 (2005)).  An employee who asserts a claim of wrongful termination must "specifically identify the clear mandate of Maryland public policy that was violated by his termination" and "plead with particularity the source of the public policy." *Terry v. Legato Sys., Inc.*, 241 F.Supp.2d 566, 569-70 (D.Md. 2003) (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002); *Porterfield*, 142 Md.App. at 140).

Defendant convincingly moves to dismiss Plaintiff's wrongful termination claim because Plaintiff has not pleaded any clear mandate of public policy that his termination violated.  (ECF No. 42-1, at 17-19).  Plaintiff first implies that he could only be terminated for cause, but that contravenes the principle of at-will employment in Maryland.  Of the two violations that can give rise to a wrongful termination claim in Maryland, Plaintiff's next allegation that he was terminated "due to [his] ongoing documented complaints about [his] truck's mechanical problems" could only theoretically arise under the second, termination for the exercise

of a specific legal right or duty.  But he does not identify how those complaints constitute the exercise of either a legal right or duty.  Even liberally construing Plaintiff's amended complaint, his allegations fall well short of the pleading requirements of a wrongful termination claim.

### G.   Count V: Title VII

Plaintiff raises claims for discrimination, hostile work environment, retaliation, and harassment presumably under Title VII, although he mistakenly raises them under Title IX. (ECF No. 37, at 4, 6).  Defendant moves to dismiss these claims on the grounds that Title IX applies only to educational institutions, which Defendant is not, and that even construing Plaintiff's claims as arising under Title VII, he does not identify any protected characteristic. (ECF No. 42-1, at 8 n.1, 16–17).  Plaintiff plainly intended to invoke Title VII rather than Title IX and does not explicitly rely on either statute in his factual allegations. Thus, the court will liberally construe his amended complaint to raise these claims under Title VII and reject Defendant's first argument.

Defendant's second argument, however, carries the day. Whichever Title VII claim a plaintiff raises, he must plead that the adverse action he suffered was "because of [his] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Defendant includes no allegations in the amended complaint regarding any of these protected characteristics. Rather, he alleges discrimination, hostile work environment, retaliation, and harassment on the basis of his complaints to Defendant regarding his truck's mechanical issues. (ECF No. 37, at 6). Without alleging a protected characteristic, Plaintiff falters at Title VII's first hurdle.

### H.   Count VI: FLSA

Finally, Plaintiff briefly attempts to allege an FLSA violation because he was "forced to work without [a] full day['s] salary" and "to receive less than half of [his] pay." (*Id.* at 6). FLSA provides a private right of action to employees who were not paid minimum wage, not paid overtime wages due, or who were discharged or discriminated against for filing a complaint under FLSA. *See* 29 U.S.C. § 216(b) (providing a private right of action for violations of 29 U.S.C. §§ 206, 207 and 215(a)(3)). The FLSA statute of limitations is "two years after the cause of action accrues," or three years for willful violations. *Id.* § 255(a).

Defendant argues that Plaintiff's FLSA claim in his amended complaint is time-barred because Plaintiff failed to assert the claim within FLSA's outermost statute of limitations of three years, and it does not relate back to his original complaint, which did not include the FLSA claim. (ECF No. 42-1, at 21-23).

Plaintiff responds that his FLSA claim was delayed because it "was initially filed with [the] EEOC," there were "unprecedented delays with [the] EEOC," and thus he is entitled to equitable tolling. (ECF No. 51, at 9–10). He does not meaningfully contest Defendant's relation-back argument.

Ordinarily, "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6)[] . . . cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred," unless "all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint.*'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (second alteration in original) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Here, Plaintiff's amended complaint indicates that he was terminated on December 9, 2021, which is the final day that an FLSA cause of action could have accrued. *See Scott v. Lori*, No. 19-cv-2014-ELH, 2020 WL 3833129, at *13 (D.Md. July 8, 2020) (noting that "the last possible date on which the plaintiff's FLSA . . . claim[] could have accrued was the date of his termination"). Therefore, FLSA's outermost statute of limitations of three years required that Plaintiff file his FLSA claim on or before December 9, 2024. Plaintiff asserted the FLSA claim for the first time in his amended

complaint filed on May 15, 2025, (ECF No. 37), over five months after the statute of limitations expired.

Defendant is correct that Plaintiff's FLSA claim does not relate back to his original complaint.  Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed.R.Civ.P. 15(c)(1)(B).  In other words, the original complaint must have "'adequately put the defendant[] on notice' of the new claims." *Ahmed v. United States*, 396 F.Supp.3d 600, 605 (M.D.N.C. 2019) (alteration in original) (quoting *Bilal-Edwards v. United Plan. Org.*, 15 F.Supp.3d 1, 17 (D.D.C. 2013)).  Plaintiff's original complaint was filed on August 18, 2023, (ECF No. 1), well within FLSA's three-year statute of limitations for willful violations and two-year statute of limitations for non-willful violations, so if his FLSA claim relates back, Defendant's statute of limitations defense fails.  Plaintiff's original complaint, however, alleged only that when he "informed [Defendant] of the [truck fire] and the hazard of poorly and/or non-maintenanced vehicles, [he] was retaliated against and demoted . . . and ultimately fired days later."  (ECF No. 1, at 6).  Nothing in that allegation put Defendant on notice that Plaintiff believed he was not paid minimum

21

wage, not paid overtime wages due, or was discharged or discriminated against for filing an FLSA complaint. In fact, Plaintiff did not mention his wages at all in his original complaint, apart from the implication that his wages were reduced when he was demoted. But demotion cannot give notice of an FLSA claim because an FLSA-compliant employer cannot pay an employee less than minimum wage, so the position to which he was demoted must presumably still have met minimum wage requirements. Therefore, Plaintiff's FLSA claim does not relate back to his original complaint and is barred by the statute of limitations.

Equitable tolling is not available to Plaintiff, either. "For equitable tolling to apply, a litigant must establish '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Warfaa v. Ali*, 1 F.4th 289, 294 (4th Cir. 2021) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)). The extraordinary circumstance must be "external to the party's own conduct." *Id.* (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). Plaintiff argues that he pursued his FLSA claim at the EEOC and the EEOC's delays prevented his timely filing. The FLSA, however, does not require that an employee file a complaint with the EEOC before filing suit in court, *see* 29 U.S.C. § 216(b); in fact, the bulk of the FLSA is outside the

EEOC's jurisdiction, *Other Employment and Civil Rights Laws Not Enforced by the EEOC*, U.S. Equal Emp. Opportunity Comm'n, https://www.eeoc.gov/other-employment-and-civil-rights-laws-not-enforced-eeoc [https://perma.cc/RK3S-TYYU] (noting that the FLSA is outside the EEOC's jurisdiction except for its equal pay provisions).  Accordingly, any delay by the EEOC processing a claim outside its jurisdiction is due to Plaintiff's *own* erroneous belief that he needed to complete his EEOC adjudication before filing his FLSA claim in federal court.  More importantly, Plaintiff indicated *in his original complaint* that he received his right-to-sue letter from the EEOC on May 24, 2023.  (ECF No. 1, at 6).  In other words, even if the EEOC were relevant to Plaintiff's FLSA claim, there is no EEOC delay attributable to the period between the filing of Plaintiff's original and amended complaints.  Put simply, there is no ground on which to grant Plaintiff equitable tolling.

All the facts necessary to Defendant's statute of limitations defense appear on the face of Plaintiff's complaint, so the court will dismiss Plaintiff's FLSA claim.[9]

---

[9] Even considering Plaintiff's FLSA claim on its merits, he fails to state a claim.  As explained, FLSA provides a cause of action to an employee who is not paid minimum wage, not paid overtime wages due, or discharged or discriminated against for filing an FLSA complaint.  *See* 29 U.S.C. § 216(b).  As Defendant argues, Plaintiff's allegation that he was "forced to work without [a] full day['s] salary" and "to receive less than half of [his] pay" fails to raise the plausible inference that he was not paid minimum wage.  (ECF No. 42-1, at 23-24).  Without any facts

## III. Plaintiff's Motion for Leave to Amend

Plaintiff provides numerous additional factual allegations, along with twenty-one exhibits, in his opposition to Defendant's motion to dismiss.  In its reply, Defendant treats these new allegations and exhibits as a motion for leave to amend and conducts a futility analysis.  As one court recently explained, when a "plaintiff has alleged new factual details in her response and [the] defendant has addressed those allegations in its reply, in view of [the] plaintiff's pro se status, the court construes [the] plaintiff's response as including a motion for leave to amend her complaint." *Harris v. Variety Wholesalers*, No. 23-cv-443, 2024 WL 3471202, at *4 (E.D.N.C. July 19, 2024).  Accordingly, the court construes Plaintiff's opposition to include a motion for leave to amend.  Plaintiff's motion for leave to amend, so construed, provides sufficient factual allegations to permit amendment of his ADA failure-to-accommodate and FMLA interference claims, but amendment of the remainder of his claims would be futile.

### A.   Standard of Review

Fed.R.Civ.P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  Accordingly, the

---

regarding Plaintiff's daily wages, the court cannot conclude that less than half of his daily wages amounted to below-minimum wage payment.

Fourth Circuit has instructed that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the party of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Defendant does not raise prejudice or bad faith but does argue that amendment would be futile. The Fourth Circuit "ha[s] made clear that district courts are free to deny leave to amend as futile if the complaint [as amended] fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Secs. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)).

### B. Exhibits

Because the court now construes the exhibits attached at ECF No. 51 as part of the proposed complaint, it may consider the exhibits when determining whether the proposed complaint would withstand Rule 12(b)(6) scrutiny, provided that they are "written instruments." Fed.R.Civ.P. 10(c). The phrase "written instruments" includes "documentary evidence, specifically, contracts, notes, and other writing[s] on which [a party's] action or defense is based." *In re NC Swine Farm Nuisance Litig.*, No. 15-cv-13, 2015 WL 3948309, at *2 (E.D.N.C. June 29, 2015) (quoting

*Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3ᵈ Cir. 1989)).  It generally does not include photographs.  *E.E.O.C. v. Bo-Cherry, Inc.*, No. 13-cv-210, 2013 WL 2317724, at *3 (W.D.N.C. May 28, 2013); *In re NC Swine Farm*, 2015 WL 3948309, at *2.  All of Plaintiff's exhibits constitute written, documentary evidence except for the photographs in Exhibits P and Q.  (*See* ECF Nos. 51-16; 51-17).  Therefore, the court may consider all the exhibits attached at ECF No. 51 except for Exhibits P and Q.

### C.   Count I: ADA Failure to Accommodate

Plaintiff provides numerous additional facts for his ADA failure-to-accommodate claim which, taken together, do not render amendment futile.  First, Plaintiff specifies that his disability consisted of post-traumatic stress disorder ("PTSD") and anxiety. (ECF No. 51, at 4).  Plaintiff's FMLA medical assessment provides further information: His condition incapacitated him from December 1, 2021, to December 10, 2021, for which he received medical treatment, it will last for longer than one year, and it is a chronic condition requiring continuing care in the form of behavioral health treatment every one to two weeks.  (ECF No. 51-1, at 3-4).  Defendant argues that Plaintiff's allegations are still "too vague" because he does not "allege the precise nature of the alleged disability, the degree to which the disability limits a major life activity, and for how long."  (ECF No. 55, at

4).  Defendant demands too much at this juncture.  Plaintiff
articulates the nature of his disability as PTSD and anxiety.[10]
The ADA's implementing regulations provide that "it should easily
be concluded that . . . post-traumatic stress disorder[] . . .
substantially limit[s] brain function."  29 C.F.R. §
1630.2(j)(3)(iii).  His FMLA paperwork explains that his condition
will last for longer than one year.  At this stage, and in light
of Plaintiff's *pro se* status, he has offered enough facts to
conclude that it is at least plausible he was disabled.  *See, e.g.*,
*McNeill v. Fayetteville State Univ.*, No. 17-cv-609, 2018 WL
4350176, at *3 (E.D.N.C. Sep. 12, 2018) ("[T]his court can draw a
reasonable inference that severe anxiety and PTSD, coupled with
short-term memory deficiencies, could substantially limit major
life activities.").

Second, Plaintiff plausibly alleges notice of his disability
to Defendant.  He asserts that he communicated the nature of his
disability to Defendant's HR Administrator, Alvina Coleman, on
December 2, 2021.  (ECF No. 51, at 3-4).  To corroborate that this
communication occurred, he attaches a log of his communications

---

[10] Defendant takes issue with the fact that Plaintiff does not
provide any medical documentation of a specific PTSD or anxiety
diagnosis.  (ECF No. 55, at 4 n.3).  It is true that Plaintiff's
FMLA paperwork does not state with particularity any diagnosis.
Taking as true, however, that Plaintiff was involved in two truck
fires within the span of several months, Plaintiff's allegation of
PTSD and anxiety is certainly plausible.

with Ms. Coleman.  (ECF No. 51-10).  He also attaches an email he sent to Ms. Coleman on December 3, 2021, in which he expressly states: "I am dealing with post traumatic stress as a result of the fire and my anxiety is uncontrollable." (ECF No. 51-12, at 5).  Such communication more than meets the notice requirement.

Defendant argues that Plaintiff does not plausibly allege notice because Plaintiff sent Defendant a doctor's note on December 2, 2021, explaining that Plaintiff could return to work on December 6.  (ECF No. 55, at 5-6, 6 n.1).  Ms. Coleman responded on December 8: "According to your doctor's note, you can return to work tomorrow, December 9, 2021. . . .  If you do not report to work tomorrow, it will be deemed a resignation."[11]  (ECF No. 51-13).  To Defendant, the doctor's note extinguishes any ADA claim Plaintiff may have, because it "affirmatively demonstrates that [Defendant] could not have any knowledge of [Plaintiff's] alleged disability or need for an accommodation **before** it terminated his employment." (ECF No. 55, at 6).

The court disagrees.  As already explained, Defendant did have plausible notice of Plaintiff's disability via his emails to Ms. Coleman on December 2 and 3.  A doctor's note that Plaintiff

---

[11] Defendant notes the discrepancy between the December 6 and 9 dates and attributes it to a "typo."  (ECF No. 55, at 3 n.1). Because Defendant treated the later of the two dates as the date on which Plaintiff could return to work, the date discrepancy is immaterial.

was "excused . . . from work" until December 6, (ECF No. 55-1, at 5), does not necessarily mean that the disability Plaintiff suffered had vanished and his return to work could be unrestricted. Rather, the doctor's note served only to excuse Plaintiff from work *entirely* for a brief period.  Moreover, Plaintiff alleges that he communicated to Ms. Coleman in his December 2 email that "his provider requested a job accommodation by way of modified job duties (*light duty, not to operate a commercial vehicle, temporarily*)." (ECF No. 51, at 4).  The December 2 email is not before the court, but taking the allegation as true, Defendant was also on notice that Plaintiff was requesting a light-duty accommodation related to his disability.

In its reply, Defendant does not challenge Plaintiff's proposed amendments as futile with regard to the third and fourth elements of a failure-to-accommodate claim, namely that "with reasonable accommodation he could perform the essential functions of the position" and that Defendant "refused to make such accommodations."  That said, Defendant did argue in its motion to dismiss Plaintiff's amended complaint that light duty is not a reasonable accommodation as a matter of law because it, "by definition, removes essential functions of any position." (ECF No. 42-1, at 14 n.3 (citing *Shoptaw v. Walmart, Inc.*, No. 21-cv-2152, 2023 WL 5287066, at *5 (D.S.C. Aug. 17, 2023)).  Defendant's

reliance on an unpublished, out-of-district opinion for this sweeping proposition is unpersuasive. The ADA contemplates that reasonable accommodations may include "job restructuring" and "part-time or modified work schedules." 42 U.S.C. § 12111(9)(B). It is not clear that intermittent, temporary "light duty assignments and ride-along accommodations" for a commercial-vehicle driver fall outside these statutory categories. Accordingly, the court is unprepared to foreclose Plaintiff's ADA claim as a matter of law on this basis. Because "the reasonableness of an accommodation is a fact-specific inquiry" to be adjudicated at a later stage, and Plaintiff alleges that he could perform the essential functions of his job with his requested accommodations, amendment would not be futile. *Gagnon v. Bd. of Educ.*, 760 F.Supp.3d 359, 371-72 (D.Md. 2024) (citing *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994)).

As to the fourth element, Defendant never challenges Plaintiff's allegations on this front. Plaintiff evidently did not receive any accommodation and alleges that Defendant failed "to engage in the interactive process required by the ADA."[12] (ECF No. 51, at 3); *see also Gagnon*, 760 F.Supp.3d at 373 ("[T]he Fourth

---

[12] Plaintiff alleges that after the second truck fire in November 2021, he was suspended, then demoted from front-end driver to rear-end driver and put on a performance improvement plan, before ultimately being terminated. (ECF No. 51, at 2, 8).

Circuit has analyzed the failure to engage in an interactive process . . . as relevant to the fourth element of a *prima facie* case of a claim of a failure to provide a reasonable accommodation[.]" (citing *Wilson*, 717 F.3d at 346; *Haneke v. Mid-Atl. Cap. Mgmt.*, 131 F.App'x 399, 400 (4th Cir. 2005) (per curiam))). Because Defendant did not provide Plaintiff any accommodation, Plaintiff has plausibly alleged the fourth element.

Given that Plaintiff's amendments give rise to a plausible ADA failure-to-accommodate claim, he will be permitted to amend his complaint.[13]

### D.    Count II: FMLA Interference

Plaintiff cures the deficiencies in his FMLA interference claim that Defendant had highlighted in his amended complaint. Specifically, Plaintiff plausibly alleges that he was an eligible employee under the FMLA because he had been employed by Defendant for ten years and worked more than 1,250 hours in the twelve-month period preceding the incident entitling him to leave. (ECF No.

---

[13] Defendant construes Plaintiff's response in opposition to include a disability termination claim, too. (ECF No. 55, at 6-8). Despite Defendant's generous interpretation, Plaintiff at no point alleges that he was terminated due to his disability. Instead, he consistently maintains that he was terminated due to the complaints he filed. (*E.g.*, ECF No. 51, at 7 (alleging that he was terminated "for reporting workplace safety violations, hostile work environment, and unfair pay under [the FLSA]"). The court will not read this theory of disability discrimination into Plaintiff's proposed amendments.

51, at 6).  Additionally, he alleges enough to support a plausible inference that he suffered a serious health condition for the same reason that he plausibly alleges a disability.  (*See id.* at 3-4).

Defendant argues, however, that Plaintiff's proposed amendment is still futile because he did not give Defendant adequate notice of his intent to take leave.  (ECF No. 55, at 8).  A brief timeline is helpful here.  Plaintiff says he contacted HR on December 2, 2021, to self-advocate for FMLA and ADA accommodation.  (ECF No. 51, at 3).  He says that HR provided him a medical assessment form and was told that the paperwork was due by December 16, 2021.  (*Id.* at 3-4).  Exhibit A is that form and provides that the form must be returned by 12/16/2021.  (ECF No. 51-1, at 2).  Plaintiff sent a doctor's note to Defendant on December 2 stating that he was excused from work until December 6.  (ECF No. 51-10, at 2).  On December 8, Defendant notified Plaintiff that, according to his doctor's note, he could return to work on December 9, so he was to "report to work at 5:30 a.m." and his manager would be Bruce Underdue.  (ECF No. 51-13, at 2).  Defendant further informed Plaintiff that if he failed to report to work on December 9, it would "be deemed a resignation of employment." (*Id.*).  There is evidence in the record that Plaintiff did report to work on December 9; he attached a text of his to an employee named Richard Simms on December 9 at 5:28 a.m., stating: "[T]his

32

is Lee im here.  not certain what I'm supposed to be doing but I can't be behind the wheels of a commercial vehicle." (ECF No. 51-11, at 3).  He followed up at 5:59 a.m.: "[K]eep me posted.  Im sitting in car." (*Id.*).  Mr. Simms responded "Ok" at 5:59 a.m. (*Id.*).  Plaintiff texted Mr. Simms again at 9:13 a.m.: "I'm still here waiting on HR to respond." (*Id.* at 2).  In a separate text message Plaintiff attaches, Plaintiff texted Defendant's HR Administrator at 10:38 a.m. an updated doctor's note excusing Plaintiff from work until December 10. (ECF Nos. 51-11, at 4; 51-10, at 2).  Defendant evidently determined that Plaintiff did *not* "report to work" on December 9 and mailed him his termination letter sometime that same day. (ECF No. 51-10, at 2).  On December 16, 2021, Plaintiff sent the completed medical form to HR. (*Id.*).  Defendant believes that it could not have had any knowledge of Plaintiff's intent to request further leave at the time he was terminated on December 9 because, at that time, it had in its possession only the doctor's note clearing Plaintiff to work beginning December 6.

At this juncture, Defendant's argument is unpersuasive. Plaintiff was initially told that December 16, 2021, was the deadline for submission of the medical assessment form, in which the doctor was to specify the amount of leave needed.  There is also evidence that Plaintiff did report to work on December 9 as

33

requested by Defendant, and that Plaintiff notified Defendant's HR Administrator on the morning of December 9 that he would take leave until December 10.  It is unclear when on December 9 Defendant officially terminated Plaintiff.  It is at least plausible, however, that Plaintiff notified Defendant of his intent to take leave *before* he was terminated.  Thus, amendment would not be futile.[14]

### E.    Count III: WCA

Although Plaintiff provides several additional factual allegations related to his WCA claim, the deficiency in his amended complaint was legal, not factual.  Plaintiff alleges that Defendant failed to follow its internal protocol for workers' compensation claims, which required the employer to complete an injury report and submit it to Defendant's Safety Department, and the Safety Department to file a claim with Defendant's workers' compensation

---

[14] Again, Defendant generously interprets Plaintiff's FMLA count to include an FMLA retaliation claim in addition to his FMLA interference claim.  "Plaintiff must prove three elements to establish a prima facie case of retaliation: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015) (citation modified), *abrogated on other grounds by*, *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).  At no point, however, does Plaintiff allege that he was retaliated against for engaging in protected activity under the FMLA.  His failure to allege a causal connection between his termination and any protected activity he engaged in is fatal to any FMLA retaliation claim he raises.

34

insurer.  (*See* ECF Nos. 51, at 8-9; 51-18).  The only relevant exception to the exclusivity provision of the WCA is the provision that permits a covered employee to "bring an action for damages" when "an employer fails to secure compensation in accordance with" the WCA.  Md. Code Ann., Lab. & Empl. § 9-509(c)(1)(ii).  Elsewhere, the WCA defines the phrase "secure compensation" to mean, among other things, "maintaining insurance with an authorized insurer." *Id.* § 9-402(a)(1).  So, although "failure to secure compensation" could plausibly mean failure to file a workers' compensation claim with the insurer on the employee's behalf, the WCA narrows it to mean failure to maintain insurance with an authorized insurer.  By Plaintiff's own admission, Defendant carried workers' compensation insurance.  Therefore, this exception to the exclusivity provision does not apply.  Whether Defendant properly followed protocol is a matter to be litigated in the SWCC, not this court.  Plaintiff will not be permitted to amend this count.

### F.    Count IV: Wrongful Termination

Plaintiff offers no new facts or legal theories to support his wrongful termination claim.  Instead, his wrongful termination claim is simply a different label for his Title VII and FLSA

35

claims, which fail on their own merits.[15]  Amendment of this count would be futile.

### G.    Count V: Title VII

Plaintiff raises the same four theories for his Title VII claims—discrimination, hostile work environment, retaliation, and harassment—but still does not tie any of those theories to a protected characteristic in Title VII.  The closest he comes to doing so is circling "race, color" in the excerpt of the Employee Handbook he attaches that discusses Defendant's employment law policies.  (ECF No. 51-20, at 2).  That is hardly enough to satisfy the requirement that a Title VII claim be linked to a protected characteristic.  Also, Plaintiff gives no indication that Defendant exhibited racial hostility at any point.  Amendment of Plaintiff's Title VII claim would be futile.

### H.    Count VI: FLSA

Plaintiff again asserts that he "was forced to work against his will and was paid less than his normal rate of pay for doing so."  (ECF No. 51, at 10).  His new allegations state that he

---

[15] Plaintiff invokes a Maryland regulation providing a clear process for disciplinary action against employees that he alleges Defendant did not follow.  (ECF No. 51, at 8 (citing COMAR § 17.04.05.04)).  Unsurprisingly, the regulation he invokes applies only to certain public employees, not private employees. *See* COMAR § 17.04.05.04; *Md. Reception, Diagnostic & Classification Ctr. v. Watson*, 144 Md.App. 684, 691 (2002) (noting that COMAR § 17.04.05.04 exists within a "statutory scheme for imposing discipline on State employees").

"raised concerns on an ongoing basis" about his pay, Defendant "acknowledged [wrongdoing], told him they would make the pay adjustments and never did." (*Id.*).    Then, "[s]hortly after Plaintiff's termination, [Defendant] changed [its] pay practices, sent out notification of these changes, and paid [its] drivers the lawful amount of compensation." (*Id.*).    Finally, Plaintiff offers that he "will demonstrate the correlation between his ongoing complaints and Defendant's ultimate act of retaliation that led to his termination." (*Id.*).

Amendment of Plaintiff's FLSA claim would be futile.    He provides no new allegation to support relation back to his original complaint or equitable tolling.    In fact, his exhibits clarify that his FLSA claim is not one for a minimum wage violation but rather an overtime wage violation related to a change in company policy in 2020 requiring Saturday work.    (ECF Nos. 51-4, at 2 ("It is my understanding that working on Saturdays is no longer optional, but is required . . . [and] we are also working for less than (almost half) of our daily wage."); 51-12, at 4 ("I have complained about not receiving my full pay for all the overtime work that I was forced to perform at a lower rate that goes against the overtime wage and hour laws[.]")).    These allegations relate to a company-wide policy change in the middle of 2020, clearly a

different transaction or occurrence from the November 2021 truck fire.  Thus, the lack of relation back is all the more plain.

Plaintiff also appears to raise an FLSA retaliation claim for the first time by asserting a "correlation" between his FLSA complaints and his termination.  (ECF No. 51, at 10).  Apart from the same relation-back issue as his original FLSA claim, Plaintiff's FLSA retaliation claim would also fail because a statement that he "will demonstrate the correlation" at some later point is insufficient to support a plausible inference of correlation, much less causation.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted and Plaintiff's motion for leave to amend, so construed, will be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
